UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION AT LONDON

| | |
|---|---|
| LORA ATWOOD,<br><br>　　　Plaintiff,<br><br>v.<br><br>KILOLO KIJAKAZI, Acting<br>Commissioner of Social Security,<br><br>　　　Defendant. | CASE NO. 6:23-CV-00057-KKC<br><br><br>**OPINION AND ORDER** |

\*\*\* \*\*\* \*\*\*

This matter is before the Court on Plaintiff Lora Atwood's motion for summary judgment. (DE 12.) Atwood brings this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of the denial of her claim for Supplemental Security Income ("SSI"). The Court, having reviewed the record, will deny Atwood's motion and affirm the Commissioner's decision.

**I.　Analysis**

The Court's review of the decision by the Administrative Law Judge ("ALJ") is limited to determining whether it "is supported by substantial evidence and was made pursuant to proper legal standards." *Rabbers v. Comm'r Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009). The Court cannot reverse the ALJ "merely because there exists in the record substantial evidence to support a different conclusion." *Buxton v. Halter, Commissioner of Social Security*, 246 F.3d 762, 772 (6th Cir. 2001). Rather, the ALJ's decision must be affirmed if it is supported by substantial evidence, even if this Court would have arrived at a different conclusion. *Elkins v. Secretary of Health and Human Services*, 658 F.2d 437, 439 (6th Cir. 1981).

1

In denying Atwood's claim, the ALJ engaged in the five-step sequential process set forth in the regulations under the Social Security Act (the "Act"). 20 C.F.R. § 404.1520(a)-(e). *See, e.g., Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997).

At step one, the ALJ determined Atwood had not engaged in substantial gainful activity since October 1, 2019, the application date. (Administrative Record ("AR") at 18.)

At step two, the ALJ determined Atwood had been suffering from the following severe impairments: obesity, degenerative disc disease, convulsive epilepsy, cervical spondylosis and radiculopathy, chronic obstructive pulmonary disease (COPD) in conjunction with tobacco abuse, anxiety, and depression. (*Id.*)

At step three, the ALJ found that Atwood's impairments did not meet or medically equal any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id.* at 18-19.)

Before proceeding to step four, the ALJ assessed Atwood's residual functional capacity ("RFC"). (*Id.* at 20-24.) In making this assessment, the ALJ considered all of Atwood's symptoms to the extent they could reasonably be accepted as consistent with objective medical evidence and other evidence. The ALJ further considered and weighed the medical opinions and prior administrative medical findings in accordance with the requirements of 20 C.F.R. § 404.1520(c). The ALJ concluded that Atwood has the RFC to perform "light work" subject to limitations. (*Id.*)

At step four, given Atwood's RFC, the ALJ found that Atwood was unable to perform any of her past relevant work. (*Id.* at 24.)

At step five, the ALJ relied on vocational expert testimony to find that Atwood was able to perform other work existing in the national economy. (*Id.*) The ALJ then concluded that Atwood was not disabled under the Act. (*Id.* at 25.)

The ALJ's decision became the final decision of the Commissioner when the Appeals Council affirmed the decision. See 20 C.F.R. § 422.210(a). Atwood subsequently exhausted her administrative remedies and filed an appeal in this Court. Now that her appeal has been properly briefed, this case is ripe for review under 42 U.S.C. § 405(g).

The Court may not conduct a de novo review of the case, resolve evidentiary conflicts, or decide questions of credibility. *Biestek v. Comm'r of Soc. Sec.*, 880 F.3d 778, 783 (6th Cir. 2017). Rather, the Court looks to the record to determine whether the ALJ's decision is supported by substantial evidence—which has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). The ALJ's decision must be read holistically. *See Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365 (6th Cir. 2013).

For the following reasons, the Court finds Atwood's arguments regarding the ALJ's evaluation of her claim unpersuasive.

### A. The ALJ's determination that Atwood has no medical need for continuous oxygen is supported by substantial evidence.

First, Atwood challenges the ALJ's determination that she does not require continuous supplemental oxygen throughout the day. (DE 12 at 5-7.) Atwood alleges she requires continuous supplemental oxygen and, as a result, this limitation should have been reflected in her RFC. (*Id.*) Atwood then argues that had this limitation been acknowledged by the ALJ in her RFC, testimony from the Vocational Expert ("VE") becomes relevant pursuant to SSR 11-2p §(D)(1)(e). The VE testified that Atwood could not work if she required continuous supplemental oxygen. (AR at 50.) However, Atwood's argument fails because the ALJ's determination that she does not require continuous supplemental oxygen is supported by substantial evidence and thus renders the VE's response to a hypothetical limitation irrelevant. Additionally, SSR 11-2p §(D)(1)(e) is inapplicable to this case.

3

As to the substantial evidence issue, the ALJ properly considered the evidence in finding Atwood has no medical requirement for continuous supplemental oxygen. Atwood's argument is based on one treatment record from June 2021 which recommend that Atwood "continue oxygen supplementation at night and as needed during the day." (AR at 676.) The ALJ considered this treatment record but determined it did not recommend **continuous** oxygen supplementation during the day. (AR at 23.) Additionally, the ALJ considered Atwood's oxygen saturation levels recorded between April 2019 and August 2021, physical examinations performed on Atwood during that time, and testimony from Atwood herself. (AR at 21-23.) The ALJ also considered the lack of objective medical evidence in the record supporting Atwood's medical need for continuous supplemental oxygen. (AR at 23.)

Based on the foregoing, the ALJ's determination that Atwood does not require continuous supplemental oxygen is supported by substantial evidence. Two forces combine for this result. On one hand, the ALJ considered all evidence in the record reasonably related to Atwood's medical need for continuous supplemental oxygen. On the other, the ALJ also considered the lack of objective evidence supporting Atwood's claim. Upon its review of the ALJ's decision, the Court has similarly located no objective medical evidence in the record supporting Atwood's position and Atwood fails to identify any such evidence in her motion. The Sixth Circuit has recognized that in some cases, "the lack of evidence [is] sufficient," to support the substantial evidence standard. *Geiger v. Sec'y of Health & Hum. Servs.*, 810 F.2d 200 (6th Cir. 1986). This is such a case. Thus, reading the ALJ's opinion holistically, a reasonable mind could accept the ALJ's consideration of the evidence as adequate to support the determination that Atwood does not require continuous supplemental oxygen. This conclusion renders the VE's testimony regarding the claimed limitation irrelevant to the ALJ's ultimate RFC determination.

As to the applicability of SSR 11-2p §(D)(1)(e), that ruling's purpose, stated in its preamble, is to consolidate the Commission's regulations on evaluating disabilities in young adults. "Young adults" are defined as "people between the ages of 18 to approximately 25 [years old]." SSR 11-2p. Here, Atwood was 49 years old when her claim for SSI was filed and has since turned 50 during the pendency of her claim. (DE 12 at 2.) This places Atwood's claim outside the purview of SSR 11-2p §(D)(1)(e)'s applicability.

### B.     The ALJ properly evaluated the opinion evidence.

Second, Atwood argues the ALJ applied improper legal standards to opinion evidence in the record. Namely, Atwood challenges the ALJ's review of (1) a treatment report from Whitney Barton, APRN, (2) a medical opinion from the State Agency consultant, Dr. Sutherland, and (3) testimony from Atwood's daughter. (DE 12 at 7-8.)

Regarding the treatment report authored by Nurse Barton, Atwood suggests the report constitutes "medical opinion" evidence that the ALJ was required to evaluate for persuasiveness as required by 20 C.F.R. § 404.1520c. To support this argument, Atwood appeals to *Shelman v. Heckler*. 821 F.2d 316 (6th Cir. 1987). In *Shelman*, the Sixth Circuit remanded an ALJ's decision in part because the ALJ failed to provide a basis for rejecting the medical opinions of the claimant's treating physicians. *Id*. at 321. The key difference in this case is that Nurse Barton's report, unlike the treating physicians' opinions in *Shelman*, does not satisfy the regulatory definition of "medical opinion" evidence. As the current regulation explains, "a medical opinion is a statement from a medical source about what [the claimant] can still do despite [her] impairment and whether [the claimant] has one or more impairment-related limitations or restrictions," in the enumerated categories. 20 C.F.R.§ 416.913(a)(2). Here, Nurse Barton's report is devoid of any opinion as to what Atwood can still do despite her medical conditions. Rather, Nurse Barton's report more

5

neatly fits the definition of "other medical evidence" defined in § 416.913(a)(3).[1] Accordingly, the ALJ was not required to evaluate Nurse Barton's report for persuasiveness as required by § 404.1520c. Instead, Nurse Barton's report needed to be merely considered by the ALJ, which it was. (AR at 23.) Thus, the ALJ did not err.

Next, Atwood takes issue with the ALJ's reliance on an opinion from the State Agency consultant, Dr. Sutherland. (DE 12 at 8.) Atwood suggests the ALJ's reliance on Dr. Sutherland's opinion is not articulated in accordance with § 404.1520c. As that regulation specifies, ALJ's are required to articulate how they considered a particular medical opinion and what factors were taken into consideration. § 404.1520c(b)(1). Most relevant to the ALJ's consideration of a medical opinion are the factors of supportability and consistency. § 404.1520c(b)(2). Here, the ALJ's opinion states that Dr. Sutherland's opinion was "**supported** by and **consistent** with the objective medical evidence discussed above, which shows no material change in the claimant's previously recognized physical impairments." (AR at 24.) Based on this portion of the ALJ's opinion alone, it is clear to the Court that the ALJ's reliance on Dr. Sutherland's opinion was articulated in satisfaction of the requirements provided in § 404.1520c.

Finally, Atwood takes issue with the ALJ's cursory consideration of her daughter's opinion testimony. (DE 12 at 8.) In Atwood's opinion, the ALJ was required to evaluate the consistency of Atwood's testimony, her daughter's testimony, and the medical evidence and then articulate the findings in the opinion. (*Id*.) This is mistaken. The opinion testimony from Atwood's daughter is considered "evidence from nonmedical sources" under 20 C.F.R. § 416.920c(d). And, as the Commissioner's brief correctly points out, that regulation provides

---

[1] "Other medical evidence" is defined as "evidence from a medical source that is not objective medical evidence or a medical opinion, including judgments about the nature and severity of your impairments, your medical history, clinical findings, diagnosis, treatment prescribed with response, or prognosis." 20 C.F.R. § 416.913(a)(3).

6

that the ALJ is "not required to articulate how [they] consider evidence from nonmedical sources." § 416.920c(d). Accordingly, the ALJ did not err by omitting an explanation as to how Atwood's daughter's testimony was considered.

### C. The ALJ did not improperly substitute her medical judgment for that of the Plaintiff's medical providers.

Third, Atwood argues the ALJ improperly substituted her own medical judgment for that of Atwood's medical providers. (DE 12 at 8-9.) Right as Atwood is that an ALJ is not permitted to substitute their own medical judgment for that of a treating provider, that did not occur here. *Meece v. Barnhart*, 192 Fed. Appx. 456, 465 (6th Cir. 2006).

The first example Atwood provides of the ALJ's alleged error is the ALJ's determination that Atwood's oxygen saturation levels were normal on "room air" throughout the medical records. (*Id*. at 9.) Essentially, Atwood takes issue with the ALJ's determination that her oxygen saturation levels were based on inhalation of "room air" as opposed to a supplemental source. (*Id*.) And while Atwood is correct in pointing out that the medical records do not identify "room air" as the oxygen source, the ALJ's determination that "room air" was the oxygen source is reasonable and does not contradict any statement or opinion from Atwood's medical providers. In the plethora of instances in the record where Atwood's oxygen saturation levels were recorded, not once does any medical provider note an observation that she was using a supplemental oxygen source when the saturation levels were recorded. (AR at 408, 411, 438, 442, 445, 448, 451, 456, 460, 464, 467, 513, 517, 520, 524, 527, 537, 541, 544, 547-548, 551, 554-555, 558, 562, 566, 580, 593, 596, 612, 619, 637, 641.) Thus, the ALJ did not improperly substitute her own medical judgment for that of Atwood's medical provider's when she determined that Atwood's oxygen saturation levels were normal on "room air".

7

The second, and final, example Atwood provides of the ALJ's alleged substitution of her own medical judgment for that of Atwood's providers relates to the results of Atwood's spirometry test. (DE 15 at 3.) However, the ALJ's opinion never contradicts the observations or opinions of Atwood's medical providers. The ALJ's opinion remarks the spirometry test "showed no obstruction, but some air trapping," while the medical records from Atwood's medical provider states the testing demonstrated "no obstruction but does show air trapping consistent with COPD." (AR at 23, 671.) The Court fails to see how the ALJ's remarks deviate in a material way from the remarks made in the medical records. Accordingly, the ALJ did not improperly substitute her own medical judgment for that of Atwood's medical provider's regarding the results of the spirometry test.

> **D.     The ALJ's determination regarding Atwood's need to alternate sitting and standing positions is adequately stated in the AR and is consistent with the RFC determination**.

Fourth, Atwood argues the ALJ's RFC assessment failed to adequately describe her limitation related to alternating standing and sitting positions. Atwood cites SSR 96-9p for support. However, Atwood's reliance on SSR 96-9p is misplaced. That ruling is only applicable in cases involving RFC's for less than a full range of sedentary work. SSR 96-9p. Here, the ALJ's RFC assessment found Atwood was capable of light work with limitations. (AR at 20.) Accordingly, because Atwood has failed to present a persuasive argument to merit setting aside the ALJ's RFC determination, SSR 96-9p is inapplicable here. *See generally Teresa G. v. Kijakazi*, No. 1:21-CV-00072-HBB, 2022 WL 3329281, at *7 (W.D. Ky. Aug. 11, 2022). Thus, there is no issue with the adequacy of the ALJ's discussion of the standing/sitting limitation stated in the RFC.

Tangentially, Atwood argues the ALJ's RFC assessment of light work is inconsistent with the ALJ's recognition of her standing/sitting limitation. Atwood correctly points out that light work typically involves occupations in which employees have little control over

8

their ability to alternate between standing or sitting. (DE 15 at 5.) In a scenario where a claimant is not functionally capable of doing the prolonged standing or sitting contemplated by an RFC of light work, SSR 83-12 instructs ALJ's to consult with a vocational expert to ensure there are jobs in the national market for such a claimant. Here, that is exactly what the ALJ did. (AR at 48-49.) And based on the ALJ's examination of the VE, the ALJ was able to discern that occupations are available in the national market that fit within an RFC assessment of light work with the standing/sitting limitation Atwood requires. (*Id.*) Accordingly, the ALJ did not err.

### E.     The ALJ did not err by failing to order additional testing.

Fifth, and finally, Atwood argues the ALJ committed reversible error by failing to obtain additional information regarding her medical condition. (DE 12 at 10.) Considering the record before them, an ALJ "has discretion to determine whether further evidence, such as additional testing or expert testimony, is necessary." *Foster v. Halter*, 279 F.3d 348, 355 (6th Cir. 2001). Here, the voluminous record considered by the ALJ consisted of both spirometry test results (AR at 671) and a physical consultative examination previously ordered by the Agency. (*Id.* at 486-489.) Based on these records and many others, the ALJ determined Atwood has not been under a disability as defined in the Act. (AR at 25.) Simply because there was insufficient evidence to support Atwood's position is no grounds at all for finding the ALJ abused her discretion in rejecting a request for additional testing. If such were the case, every unsuccessful claimant would be entitled to additional testing. As is the case here, ALJ's who have sufficient medical evidence regarding a claimant's impairments to determine their disability status act within their discretion by rejecting requests to order additional testing. Thus, the ALJ did not err here.

9

## II.     Conclusion

For the above reasons, the Court **HEREBY ORDER** that:

1. The plaintiff's motion for summary judgment (DE 12) is DENIED;

2. The defendant's motion for summary judgment (DE 14) is GRANTED;

3. The decision of the Commissioner is AFFIRMED pursuant to sentence four of 42 U.S.C. § 405(g), in that it was supported by substantial evidence and was decided by proper legal standards; and

4. A judgment will be entered contemporaneously with this order.

This 16th day of September, 2024.

KAREN K. CALDWELL
UNITED STATES DISTRICT JUDGE
EASTERN DISTRICT OF KENTUCKY